**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**MARK M. KRATTER, BORIS ZUBOREV, and EUGENE FINKELBERG, Plaintiffs,**

**v.**

**Civil Action No.:** ________________

**NIKE, INC., CONVERSE, INC., TBL LICENSING LLC d/b/a TIMBERLAND, and NORDSTROM, INC., Defendants.**

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, UNFAIR COMPETITION, CUTPA VIOLATIONS, AND RELATED CLAIMS**

## INTRODUCTION

1. This action arises under the Copyright Act, 17 U.S.C. § 101 et seq., and state law to remedy the unauthorized copying, reproduction, commercialization, and sale of six original **three-dimensional** sculptural footwear works created in 1992 by artists Boris Zuborev and Eugene Finkelberg at East Village Shoe Repair in Manhattan, New York.

2. The six sculptural footwear works at issue have been recognized for decades as innovative, influential, and artistically significant within the fashion industry. Through extensive celebrity exposure, media coverage, and direct interactions with designers and commercial brands, Plaintiffs' works became widely known and accessible. Defendants later reproduced distinctive sculptural elements of these works without authorization, giving rise to the present dispute. Plaintiffs seek declaratory relief, damages, disgorgement, injunctive relief, attorneys' fees, and all other relief available under federal and state law.

## I. NATURE OF THE ACTION

3. Plaintiffs bring claims for copyright infringement under 17 U.S.C. § 501, a declaratory judgment under 28 U.S.C. § 2201, violations of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., common-law unfair competition (misappropriation and passing off), and unjust enrichment.

4. The six sculptural footwear works at issue are original **three-dimensional** artistic creations that embody expressive, nonfunctional sculptural elements that are conceptually separable from any utilitarian aspects of footwear and therefore protectable under 17 U.S.C. § 102(a)(5).

5. Plaintiffs submitted a copyright application (Case No. **1-14900102793**) to the United States Copyright Office. The Copyright Office refused registration on September 16, 2025, on the ground that the works are useful articles lacking separable copyrightable features. Plaintiffs filed a Second Request for Reconsideration on October 27, 2025. Pursuant to 17 U.S.C. § 411(a), Plaintiffs are authorized to bring this civil action notwithstanding the refusal, and this Court must determine copyrightability de novo.

## II. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Plaintiffs' federal claims arise under the Copyright Act.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

9. Personal jurisdiction over Defendants Nike, Converse, and Timberland is proper in this District because each transacts substantial business in Connecticut, has purposefully availed itself of the privilege of conducting business in Connecticut, and has sold, marketed, and distributed the infringing footwear products to Connecticut consumers.
10. Plaintiffs submitted a copyright application (Case No. **1-14900102793**) to the United States Copyright Office. The Copyright Office refused registration on September 16, 2025, on the ground that the works are useful articles lacking separable copyrightable features. Plaintiffs filed a Second Request for Reconsideration on October 27, 2025. Pursuant to 17 U.S.C. § 411(a), Plaintiffs are authorized to bring this civil action notwithstanding the refusal, and this Court must determine copyrightability de novo.
11. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to the claims occurred in this District, including the sale and distribution of infringing products and the harm suffered by Plaintiff Kratter, a Connecticut resident.

## III. PARTIES

12. **Plaintiff Mark M. Kratter** is an individual and attorney residing in Norwalk, Connecticut. In 2025, co-creators Boris Zuborev and Eugene Finkelberg assigned to Mr. Kratter an undivided one-third (1/3) ownership interest in the copyrights in each of the six works at issue. The assignment was memorialized in a written instrument executed by Zuborev and Finkelberg and complies with 17 U.S.C. § 204(a). Mr. Kratter brings this action as a co-owner of the copyrights.

13. **Plaintiff Boris Zuborev** is an individual residing in Brooklyn, New York. He co-created the six sculptural footwear works at issue and is an original copyright claimant. Zuborev emigrated from Belarus, attended art school, and co-founded East Village Shoe Repair.

14. **Plaintiff Eugene Finkelberg** is an individual residing in Brooklyn, New York. He co-created the six sculptural footwear works at issue and is an original copyright claimant. Finkelberg emigrated from Russia, attended shoemaker school, and co-founded East Village Shoe Repair.

15. **Defendant Nike, Inc.** is an Oregon corporation with its principal place of business in Beaverton, Oregon. Nike is a global designer, manufacturer, and seller of athletic footwear and apparel and is the parent company of Converse, Inc.

16. **Defendant Converse, Inc.** is a Delaware corporation with its principal place of business in Boston, Massachusetts. Converse is a wholly owned subsidiary of Nike and designs, manufactures, markets, and sells footwear worldwide.

17. **Defendant TBL Licensing LLC d/b/a Timberland** ("Timberland") is a Delaware limited liability company with its principal place of business in Stratham, New Hampshire. Timberland designs, manufactures, markets, and sells footwear worldwide.

18. **Defendant Nordstrom, Inc.** is a Washington corporation with its principal place of business in Seattle, Washington. Nordstrom operates retail stores and online platforms that sell footwear nationwide, including in Connecticut. Nordstrom is named in this action for jurisdictional purposes and because it has sold and distributed the infringing footwear products in Connecticut.

19. Upon information and belief, Defendants have acted in concert and have profited from one another's infringing activities.

## IV. FACTUAL ALLEGATIONS — BACKGROUND AND CREATION OF THE WORKS

20. In 1992, at East Village Shoe Repair located at 1 St. Mark's Place in Manhattan, Boris Zuborev and Eugene Finkelberg created a series of six original sculptural footwear works that combined inventive sculptural treatments with sneaker and boot forms. The works were handcrafted and exhibited distinctive, nonfunctional sculptural elements that reflected the creators' artistic choices.

21. After East Village Shoe Repair relocated to Bushwick, Brooklyn, Zuborev and Finkelberg continued to create, exhibit, and sell their sculptural footwear designs from the Bushwick studio (the "Bushwick Studio").

22. East Village Shoe Repair and the Bushwick Studio attracted a notable roster of celebrity clients and received substantial media attention. Plaintiffs' clients and coverage included, among others, Madonna, Rihanna, Lady Gaga, Kate Moss, Doja Cat, Ciara, Jennifer Lopez, Macaulay Culkin, Kevin Hart (who appeared on the cover of GQ wearing Plaintiffs' footwear), and features in amNewYork, EV Grieve, Vogue, GQ, Nylon, PAPER Magazine, i-D Magazine, Women's Wear Daily, the New York Post, and television programs.

23. Plaintiffs' work also appeared in the motion picture *Party Monster* and in the music video for Mobb Deep's "Dead Man's Shoes." Social media posts featuring Plaintiffs' work have garnered millions of views, further amplifying public exposure.

24. In 2018, Converse entered into a collaboration with the fashion label MadeMe that expressly credited Boris Zuborev and East Village Shoe Repair as the creative source for the designs that inspired the collaboration. Media coverage of the MadeMe × Converse launch (including PAPER Magazine and i-D Magazine) documented Converse's public acknowledgment of Zuborev's creative legacy. At the launch event, Zuborev manned a pop-up repair counter and Converse publicly credited him as a creative predecessor.

25. Prior to the 2024 Martine Ali × Converse All Star 70 XXHi release, designer Martine Ali personally visited Zuborev at the Bushwick Studio. That visit provided direct access to Plaintiffs' Work 5.

26. In 2024, designer Lorena Pipenco presented collections at New York Fashion Week under the name "Zubos," explicitly referencing Zuborev's creative legacy; Vogue covered those presentations.

27. Plaintiffs posted images of their works on social media beginning in 2019 (though the works were created in 1992), and those posts further documented Plaintiffs' creative authorship and public exposure.

## V. THE SIX SCULPTURAL FOOTWEAR WORKS (DETAILED DESCRIPTIONS)

**Overview:** Each of the six works is an original three-dimensional sculptural creation. The descriptions below identify the sculptural elements that are original, nonfunctional, and conceptually separable from the utilitarian aspects of footwear.

**Work 1 — Moccasin Sneaker Hybrid**

28. **Creation and form.** Work 1 is a sculptural hybrid that fuses a sneaker base (a Converse Chuck Taylor platform) with a handcrafted faux-moccasin overlay. The overlay is applied to the toe and forefoot and includes a hand-stitched U-shaped vamp panel.

29. **Distinctive sculptural elements.** The work features ornamental hand-sewn seam lines across the upper, distinctive edge treatments, and a recalibrated silhouette that blends moccasin and sneaker aesthetics into a single sculptural object.

30. **Separability.** The faux-moccasin overlay, vamp panel, ornamental stitching, and edge treatments are perceivable as independent sculptural or applied textile elements. Imagined separately from the shoe, these elements would qualify as protectable sculptural works under the separability analysis articulated in *Star Athletica*.

31. **Infringing products.** Defendants Converse and Nike have produced and sold models that reproduce the moccasin overlay, vamp stitching, and hybrid silhouette (including Converse's All Star Moc and later moccasin-overlay Chuck Taylor models), without authorization.

**Work 2 — 70's Lux Sole Sneaker**

32. **Creation and form.** Work 2 is a sculptural sneaker that emphasizes a layered foxing architecture and an elevated platform sole inspired by 1970s luxury footwear.

33. **Distinctive sculptural elements.** The work includes exaggerated platform curvature, sculpted sole profile, rebalanced upper-to-sole proportions, decorative seam mapping on the upper panels, and ornamental outsole edge treatments.

34. **Separability.** The layered foxing, platform curvature, and decorative sole treatments are independently perceivable sculptural elements and are conceptually separable from the shoe's utilitarian functions.

35. **Infringing products.** Defendants Converse and Nike have produced models that replicate these sole and platform treatments (including the Converse Chuck 70 De Luxe Heel and De Luxe Wedge and the Martine Ali × Converse De Luxe Wedge), without authorization.

**Work 3 — Sneaker with Zipper Closure and Faux Eyelets (No Holes)**

36. **Creation and form.** Work 3 replaces traditional lacing with a central zipper closure along the tongue while retaining sealed, nonfunctional faux eyelets positioned where laces would normally appear.

37. **Distinctive sculptural elements.** The juxtaposition of a functional zipper with ornamental, sealed faux eyelets creates a sculptural commentary on footwear convention; the faux eyelets are decorative and cannot receive laces.

38. **Separability.** The sealed faux eyelets and the zipper-plus-eyelet composition are ornamental choices that can be perceived independently of the shoe's utilitarian fastening function.

39. **Infringing products.** Defendants Nike and Converse have produced models that combine central zipper closures with ornamental eyelet treatments (including Nike's Zoom Haven and several Converse zipper models), without authorization.

**Work 4 — Faux Fur Sneaker**

40. **Creation and form.** Work 4 applies comprehensive faux fur across the collar, tongue, and upper of a sneaker, making the fur surface the dominant visual and textural feature.

41. **Distinctive sculptural elements.** The fur application transforms the sneaker silhouette, creates a strong textural contrast with the rubber outsole, and rebalances visual weight and proportions as a sculptural statement.

42. **Separability.** The faux fur covering is an applied decorative surface that can be imagined as a standalone textile or sculptural object and is therefore conceptually separable from the shoe's utilitarian function.

43. **Infringing products.** Defendant Converse produced a faux-fur Chuck Taylor model that reproduces the comprehensive fur coverage and silhouette transformation, without authorization.

**Work 5 — Knee/Thigh-High Sneaker-Boot Hybrid with Faux Laces and Zipper Closure**

44. **Creation and form.** Work 5 extends a stacked sneaker upward into a knee- or thigh-high shaft, fusing athletic footwear vocabulary with tall-boot proportions.

45. **Distinctive sculptural elements.** The work features nonfunctional faux laces running along the shaft as ornamental elements and a concealed side-entry zipper that provides the sole means of entry. A 1992 photograph of co-creator Eugene Finkelberg with the thigh-high version documents the work's creation.

46. **Separability.** The extended silhouette and faux lace ornamentation are expressive design choices that are conceptually separable from any utilitarian need for a tall boot.

47. **Infringing products.** Defendants Converse and Nike have produced extended-shaft sneaker-boot models (including the Converse Chuck Taylor XX Hi and the Martine Ali × Converse All Star 70 XXHi) that reproduce the extended silhouette and faux lace treatments, without authorization. Designer Martine Ali personally visited the Bushwick Studio prior to the Martine Ali × Converse collaboration, establishing direct access to Work 5.

**Work 6 — High-Heel Feminized Work Boot**

48. **Creation and form.** Work 6 transforms the Timberland 6-inch work boot into a high-heel, feminized sculptural object by adding a sculptural high heel, tapering the toe, slimming the shaft, and rebalancing proportions.

49. **Distinctive sculptural elements.** The sculptural heel, tapered pointed toe, smooth leather outsole, and feminized shaft are aesthetic choices that reframe the traditionally masculine work boot as a high-fashion sculptural object.

50. **Separability.** Each of these elements is independently perceivable as an aesthetic, nonfunctional sculptural feature and is conceptually separable from the utilitarian function of a work boot.

51. **Infringing products.** Defendant Timberland and other brands have produced high-heel work-boot variants that reproduce the sculptural heel and feminized silhouette originated by Plaintiffs, without authorization. Public figures and fashion houses have been photographed or reported wearing similar high-heel work-boot variants, demonstrating the commercial value of the concept Plaintiffs created.

52. **Ownership.** Plaintiffs Kratter, Zuborev, and Finkelberg are the joint owners of the copyrights in Works 1–6. Kratter holds an undivided one-third interest; Zuborev and Finkelberg each hold an undivided one-third interest.

## VI. ACCESS, COPYING, AND WILLFULNESS

53. Plaintiffs' works were widely accessible to the public, the fashion industry, and Defendants through celebrity clients, media coverage, film and music video appearances, social media exposure, and documented collaborations.

54. Converse's 2018 MadeMe × Converse collaboration publicly credited Boris Zuborev and East Village Shoe Repair as the creative source, establishing actual knowledge and direct awareness of Plaintiffs' work.

55. Martine Ali's personal visit to the Bushwick Studio before the Martine Ali × Converse collaboration establishes direct access to Work 5.

56. The similarities between Plaintiffs' works and the Defendants' products are substantial and probative of copying under the ordinary observer standard and, where appropriate, the more discerning observer test.

57. With respect to Works 3 and 6, the degree of similarity between Plaintiffs' 1992 originals and the later products is so striking that independent creation is implausible, establishing copying even without direct proof of access.

58. Defendants acted with actual or constructive knowledge of Plaintiffs' works and proceeded to reproduce and commercialize substantially similar products without authorization, license, or compensation. Plaintiffs allege willful infringement.

## VII. CLAIMS FOR RELIEF

### COUNT I — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) — AGAINST NIKE, INC.

59. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1–58.

60. Plaintiffs are the joint owners of valid copyrights in Works 1–6.

61. Nike has copied, reproduced, manufactured, marketed, and sold footwear products that appropriate protectable sculptural elements of Plaintiffs' works, including but not limited to the elements described in Works 1–5.

62. Nike's acts constitute infringement of Plaintiffs' exclusive rights under 17 U.S.C. § 106 and give rise to liability under 17 U.S.C. § 501.

63. Nike's infringement was willful, intentional, and in disregard of Plaintiffs' rights.

64. Plaintiffs have been damaged by Nike's infringement and are entitled to recover actual damages and disgorgement of Nike's profits, or, at Plaintiffs' election, statutory damages under 17 U.S.C. § 504(c), together with attorneys' fees and costs under 17 U.S.C. § 505.

**COUNT II — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) — AGAINST CONVERSE, INC.**

65. Plaintiffs reallege and incorporate by reference paragraphs 1–64.

66. Converse has copied, reproduced, manufactured, marketed, and sold footwear products that appropriate protectable sculptural elements of Plaintiffs' works, including but not limited to the elements described in Works 1–5.

67. Converse's acts constitute infringement of Plaintiffs' exclusive rights under 17 U.S.C. § 106 and give rise to liability under 17 U.S.C. § 501.

68. Converse's infringement was willful, intentional, and in disregard of Plaintiffs' rights.

69. Plaintiffs have been damaged by Converse's infringement and are entitled to recover actual damages and disgorgement of Converse's profits, or, at Plaintiffs' election, statutory damages under 17 U.S.C. § 504(c), together with attorneys' fees and costs under 17 U.S.C. § 505.

**COUNT III — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) — AGAINST TBL LICENSING LLC d/b/a TIMBERLAND**

70. Plaintiffs reallege and incorporate by reference paragraphs 1–69.
71. Timberland has copied, reproduced, manufactured, marketed, and sold footwear products that appropriate protectable sculptural elements of Plaintiffs' Work 6.
72. Timberland's acts constitute infringement of Plaintiffs' exclusive rights under 17 U.S.C. § 106 and give rise to liability under 17 U.S.C. § 501.
73. Timberland's infringement was willful, intentional, and in disregard of Plaintiffs' rights.
74. Plaintiffs have been damaged by Timberland's infringement and are entitled to recover actual damages and disgorgement of Timberland's profits, or, at Plaintiffs' election, statutory damages under 17 U.S.C. § 504(c), together with attorneys' fees and costs under 17 U.S.C. § 505.

**COUNT IV — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) — AGAINST NORDSTROM, INC. (LIMITED TO SALES/DISTRIBUTION)**

75. Plaintiffs reallege and incorporate by reference paragraphs 1–74.

76. Nordstrom has sold, offered for sale, and distributed footwear products manufactured by Nike, Converse, and Timberland that reproduce protectable sculptural elements of Plaintiffs' works in Connecticut.

77. By selling and distributing those products in Connecticut, Nordstrom has contributed to Plaintiffs' injuries and profited from the sale of products that infringe Plaintiffs' copyrights.

78. Plaintiffs reserve all rights to seek appropriate relief against Nordstrom to the extent permitted by law; however, consistent with Plaintiffs' prior instruction, Nordstrom is named primarily for jurisdictional and venue purposes and for its role as a retailer that sold infringing products in Connecticut.

79. Plaintiffs have been damaged by Nordstrom's sales and distribution of infringing products.

**COUNT V — DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

80. Plaintiffs reallege and incorporate by reference paragraphs 1–79.

81. An actual and immediate controversy exists between Plaintiffs and Defendants concerning the copyrightability of Plaintiffs' six sculptural footwear works. The Copyright Office refused registration on the ground that the works are useful articles lacking separable copyrightable features. Plaintiffs contend that the works contain original, creative, and conceptually separable sculptural elements protectable under 17 U.S.C. § 102(a)(5). A declaratory judgment is necessary to resolve this controversy and to clarify Plaintiffs' rights under federal law.

82. Plaintiffs therefore seek a judicial declaration that the sculptural elements of Works 1–6 are copyrightable and that Plaintiffs are the owners of the copyrights in those works.

**COUNT VI — VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CUTPA) (Conn. Gen. Stat. § 42-110a et seq.)**

83. Plaintiffs reallege and incorporate by reference paragraphs 1–82. Defendants' conduct — including copying, reproducing, commercializing, distributing, and selling footwear products that replicate Plaintiffs' original sculptural works — constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of Conn. Gen. Stat. **§ 42-110b(a)**.

84. Defendants' conduct — including copying, reproducing, commercializing, distributing, and selling footwear products that replicate Plaintiffs' original sculptural works — constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of Conn. Gen. Stat. § 42-110b(a).

85. Defendants' conduct violates CUTPA because it is immoral, unethical, oppressive, and unscrupulous; offends established public policy; and has caused substantial injury to consumers and to Plaintiff Kratter in Connecticut, where the infringing products were sold and where the harm was suffered.

86. Defendants acted with actual knowledge of Plaintiffs' works, including through the MadeMe × Converse collaboration in which Converse publicly credited Boris Zuborev and East Village Shoe Repair as the creative source of the designs later copied by Defendants.

87. Defendants' unfair and deceptive practices have caused ascertainable loss to Plaintiffs, including lost licensing revenue, lost commercial opportunities, dilution of the value of Plaintiffs' works, and unjust profits retained by Defendants.

88. Plaintiffs seek all remedies available under CUTPA, including compensatory damages, punitive damages, attorneys' fees, and injunctive relief.

**COUNT VII — COMMON-LAW UNFAIR COMPETITION (MISAPPROPRIATION AND PASSING OFF)**

89. Plaintiffs reallege and incorporate by reference paragraphs 1–88.

90. Plaintiffs invested substantial labor, skill, creativity, and expense in creating the six original sculptural footwear works described herein.

91. Defendants misappropriated Plaintiffs' creative labor and skill by copying, reproducing, and commercializing footwear products that replicate the distinctive sculptural elements of Plaintiffs' works, including the moccasin overlay, faux eyelets, zipper-closure configuration, faux fur application, extended sneaker-boot silhouette, and high-heel feminized work-boot transformation.

92. Defendants' conduct constitutes unfair competition under Connecticut common law because it appropriates the fruits of Plaintiffs' creative efforts and passes off Defendants' products as original designs when they are derived from Plaintiffs' works.

93. Plaintiffs have suffered damages, including loss of commercial value, dilution of their creative works, and unjust profits retained by Defendants.

**COUNT VIII — UNJUST ENRICHMENT**

94. Plaintiffs reallege and incorporate by reference paragraphs 1–93.

95. Defendants have received and retained substantial financial benefits from the sale of footwear products that copy and commercialize Plaintiffs' original sculptural works, including but not limited to the infringing Nike, Converse, and Timberland products identified herein.

96. Defendants' enrichment was unjust because it was obtained through the unauthorized use of Plaintiffs' creative labor, skill, and original sculptural expression, without license, compensation, or attribution.

97. Equity and good conscience require restitution because Defendants knowingly profited from Plaintiffs' works, including after Converse publicly acknowledged Boris Zuborev and East Village Shoe Repair as the creative source of the designs later copied by Defendants.

98. Plaintiffs seek disgorgement of Defendants' profits and restitution of the value wrongfully obtained.

## VIII. DAMAGES, INJUNCTIVE RELIEF, AND OTHER REMEDIES

99. Plaintiffs have suffered and continue to suffer monetary damages and irreparable harm as a result of Defendants' acts, including but not limited to lost licensing revenue, lost commercial opportunities, diminution and dilution of the value of Plaintiffs' works, and unjust enrichment by Defendants.

100. Plaintiffs are entitled to recover actual damages and disgorgement of Defendants' profits attributable to the infringement, or, at Plaintiffs' election, statutory damages under 17 U.S.C. § 504(c) for willful infringement.

101. Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing Plaintiffs' copyrights and from manufacturing, marketing, distributing, or selling products that reproduce Plaintiffs' protectable sculptural elements.

102. Plaintiffs are entitled to an order requiring the impoundment and destruction of infringing articles and materials used to produce them.

103. Plaintiffs are entitled to recover attorneys' fees and costs under 17 U.S.C. § 505 and any other applicable statute or doctrine.

104. Plaintiffs are entitled to pre- and post-judgment interest on any monetary award.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. A declaration that Plaintiffs are the owners of valid copyrights in Works 1–6 and that the sculptural elements described herein are copyrightable under 17 U.S.C. § 102(a)(5);

B. A declaration that Defendants have infringed Plaintiffs' copyrights in Works 1–6;

C. An award to Plaintiffs of Defendants' profits, actual damages, and any other monetary relief available under the Copyright Act, or, at Plaintiffs' election, statutory damages for willful infringement under 17 U.S.C. § 504(c);

D. An award of punitive damages, treble damages, or other enhanced damages to the extent permitted under applicable law for Defendants' willful and malicious conduct;

E. A permanent injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from manufacturing, importing, marketing, distributing, offering for sale, or selling footwear products that infringe Plaintiffs' copyrights;

F. An order directing the impoundment and destruction of all infringing articles and materials used to produce them;

G. An award of disgorgement and restitution for unjust enrichment;

H. An award of compensatory damages for Plaintiffs' losses under CUTPA and common law;

I. An award of attorneys' fees, costs, and expenses of litigation, including expert fees, to the fullest extent permitted by law;

J. Pre- and post-judgment interest on all monetary awards; and

K. Such other and further relief as the Court deems just and proper.

**X. JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

**XI. NOTICE TO THE REGISTER OF COPYRIGHTS**

Pursuant to 17 U.S.C. § 411(a), Plaintiffs hereby provide notice to the Register of Copyrights of the filing of this civil action. Plaintiffs submitted a copyright application for the six sculptural footwear works at issue (Case No. **1-14900102793**). The Copyright Office refused registration on September 16, 2025, on the ground that the works are useful articles lacking separable copyrightable features. Plaintiffs filed a Second Request for Reconsideration on October 27, 2025. Plaintiffs will serve a copy of this Complaint on the Register of Copyrights as required by law.

Dated: October 16, 2026

The Plaintiffs,

/s/ Mark M. Kratter
Mark M. Kratter
Law Offices of Mark M. Kratter, LLC
71 East Avenue, Suite K
Norwalk, CT 06851
203-853-2312
Fax 203-853-2317
Email Laws4ct@aol.com
Juris Number CT13005

**XII. VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 16, 2026

/s/ Mark M. Kratter

Mark M. Kratter
Law Offices of Mark M. Kratter, LLC
71 East Avenue, Suite K
Norwalk, CT 06851
203-853-2312
Fax 203-853-2317
Email Laws4ct@aol.com
Juris Number CT13005

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 16, 2026

/s/ Boris Zuborev
Boris Zuborev

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 15, 2026

/s/ Eugene Finkelberg
Eugene Finkelberg

## XIII. EXHIBITS ATTACHED

**Exhibit A – Second Request for Reconsideration Package** Includes:

- Copyright Office refusal letter dated September 16, 2025
- Original copyright application (Case No. 1-14900102793)
- Photographs of all six sculptural footwear works
- Full reconsideration brief (legal arguments, originality analysis, separability analysis, historical background, citations)
- Photographs of the original 1992 Converse Chuck Taylor base shoes
- Photographs and screenshots documenting East Village Shoe Repair's cultural presence (Vogue, FOX5, New York Post, social media)
- Photographs of celebrities and models wearing EVSR footwear
- Comparative photographs showing Converse's later moccasin-style variants
- Any supporting materials submitted with the reconsideration request (1990s photographs, affidavits, prior-art distinctions)

**Exhibit B – Assignment Instrument(s)** Written assignment conveying a one-third undivided copyright interest to Mark M. Kratter (2025).

**Exhibit C – § 411(a) Notice Letter to the Register of Copyrights** Letter providing statutory notice of the filing of this civil action.